IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DARIUS KINNEY,<br><br>           Petitioner,<br><br>vs.<br><br>WARDEN DAVID W. GRAY,<br><br>           Respondent. | CASE NO. 1:20-cv-573<br><br>DISTRICT JUDGE<br>JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Petitioner Darius Kinney filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Kinney is in custody at the Belmont Correctional Institution due to a journal entry of sentence in the case *State v. Kinney*, Cuyahoga County Court of Common Pleas, Case No. CR-17-617832-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

### Summary of facts

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. Section 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Kinney's conviction as follows:

{¶2} On May 29, 2017, at 1:00 a.m., appellant was operating his vehicle at an excessive rate of speed, 51 mph in a 35 mph zone. As appellant's vehicle approached the intersection of East 93rd Street and Gibson Street in Cleveland, Ohio, his vehicle struck and killed two individuals, Denise Bradley and Leo Pinkard, as they were attempting to cross East 93rd Street. Appellant failed to stop after his vehicle struck the two victims and failed to render aid. Appellant fled the scene traveling southbound on East 93rd Street.

{¶3} Later that same day, approximately 12 hours later, Cleveland police received an anonymous tip that led investigating officers to appellant's residence. Investigating officers observed appellant's vehicle backed into his garage. The vehicle was backed into the garage such that the front half of the vehicle was observed by investigating officers. Although a blanket covered a portion of the hood of the vehicle, officers were able to observe damage to the vehicle's windshield. The damage to the windshield was consistent with what had been observed at the scene of the accident.

{¶4} As officers were approaching appellant's vehicle, appellant exited his residence and admitted to investigating officers that he had been driving his vehicle the previous evening. Appellant also stated to officers that he was going to turn himself in. Appellant was subsequently arrested.

*State v. Kinney*, 2019 WL 855673, at *1 (Oh. Ct. App. Feb. 21, 2019).

**Procedural background**

*1.     Trial court proceedings*

In June 2017, a Cuyahoga County Grand Jury indicted Kinney on two counts of aggravated vehicular homicide, one count of failure to stop after an accident, and one count of tampering with evidence. Doc. 9-1, at 5-6 (Exhibit 1). Kinney, through counsel, pleaded not guilty. Doc. 9-1, at 7 (Exhibit 2). The case was set for trial.

In November 2017, Kinney, through counsel, filed a motion in limine to "exclud[e] from evidence at trial, and from any statements or arguments of counsel, the State's photographs of the deceased and the State's photographs of [Kinney's] vehicle." Doc. 9-1, at 9 (Exhibit 3). A few days later, the trial court denied Kinney's motion. Doc. 9-1, at 21 (Exhibit 5).

At a hearing in January 2018, Kinney, through counsel, withdrew his not guilty plea and pleaded no contest. Doc. 9-1, at 22 (Exhibit 6). The trial court accepted Kinney's plea and found him guilty as charged in the indictment. *Id*. The next month, the trial court sentenced Kinney to twelve years in prison. Doc. 9-1, at 23 (Exhibit 7).

2.    *Direct appeal*

Kinney, through new counsel, appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio. Doc. 9-1, at 25 (Exhibit 8). In his brief, Kinney raised the following assignments of error:

1.    Appellant's Sixth Amendment rights were violated because counsel did not file a motion to suppress.

Were appellant's Sixth Amendment rights violated where counsel did not file a motion to suppress although the record indicates that police violated appellant's Fourth Amendment rights by entering on his property without a warrant in order to search a vehicle therein which resulted in the unlawful search and seizure upon which the charges in this case are based?

2.    Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

Is appellant's sentence contrary to law because the records do not support the imposition of consecutive sentences?

Doc. 9-1, at 37 (Exhibit 9). On February 21, 2019, the Ohio Court of Appeals affirmed the trial court's judgment and sentence. Doc. 9-1, at 79-98 (Exhibit 11).

On March 26, 2019, Kinney, *pro se*, appealed to the Ohio Supreme Court. Doc. 9-1, at 100 (Exhibit 12). In his memorandum in support of jurisdiction, Kinney asserted the following propositions of law:

> 1.      Appellant's Sixth Amendment [rights] were violated because trial counsel did not file a motion to suppress.
>
> 2.      Appellant's Sixth Amendment rights were violated because appellate counsel failed to: A) challenge the court of appeals error by not filing motions for reconsideration and/or certify a conflict; and/or B) notify appellant "timely" of his options to do so.

Doc. 9-1, at 103 (Exhibit 13). In May 2019, the Ohio Supreme Court declined to accept jurisdiction of Kinney's appeal under S.C.Prac.R. 7.08(B)(4). Doc. 9-1, at 132 (Exhibit 15).

### 3.      *Motion for reconsideration*

On March 8, 2019, Kinney, pro se, filed a motion for reconsideration under Ohio App. R. 26(A) in the Ohio Court of Appeals. Doc. 9-1, at 133 (Exhibit 16). On April 10, 2019, the Ohio Court of Appeals denied Kinney's motion. Doc. 9-1, at 142 (Exhibit 18).

### 4.      *Motion to certify a conflict*

On March 27, 2019, Kinney, pro se, filed two motions.

Kinney filed a motion to certify a conflict in the trial court under Ohio App. R. 25. Doc. 9-1, at 143 (Exhibit 19). Kinney argued that a conflict existed

because 2 cases that the Ohio Court of Appeals relied on when deciding his direct appeal were not analogous to Kinney's case. Doc. 9-1, at 143-144.

Kinney also filed a motion for an extension of time to file a motion to certify a conflict in the Ohio Court of Appeals under Ohio App. R. 25. Doc. 9-1, at 154 (Exhibit 20). Kinney argued that appellate counsel didn't notify him of the Ohio Court of Appeals' February 21, 2019, decision until March 4, 2019. *Id.*

On April 10, 2019, the Ohio Court of Appeals denied Kinney's motion for more time to file an App. R. 25 motion. (Exhibit 21). In November 2019, the trial court, upon notification from the Ohio Court of Appeals, ordered Kinney's "sentence…into execution." Doc. 9-1, at 203 (Exhibit 29).

   5.   *Application to reopen*

On April 17, 2019, Kinney, pro se, filed an application to reopen his appeal under Ohio App. R. 26(B) in the Ohio Court of Appeals. Doc. 9-1, at 147 (Exhibit 22). Kinney raised this ineffective assistance of appellate counsel claim:

> Whether counsel should have filed challenges to the Court: motions for Reconsideration, pursuant to App. R. 26(A); or, to Certify a Conflict, pursuant to App. R.25; and/or notify appellant "timely" and/or of his rights to do so?

Doc. 9-1, at 150. In June 2019, the Ohio Court of Appeals denied Kinney's application to reopen. Doc. 9-1, at 165-167 (Exhibit 24).

Kinney, pro se, appealed to the Ohio Supreme Court. Doc. 9-1, at 168 (Exhibit 25). In his memorandum in support of jurisdiction, Kinney asserted this proposition of law:

5

Appellant's Sixth Amendment rights were violated because appellate counsel failed to notify appellant of the Appellate Court's decision (direct appeal), which prevented him a timely filing of Appellate Rule #25 (Motion to Certify a Conflict); and/or to file a "Motion for Reconsideration," pursuant to Appellate Rule #26(A) and/or Appellate Rule (App. R.) #25 on behalf of appellant when counsel knew or should have known that the Court of Appeals' decision was erroneous (within their respective time-limits—ten (10) days from the court's decision.

Doc. 9-1, at 171 (Exhibit 26). In September 2019, the Ohio Supreme Court declined to accept jurisdiction. Doc. 9-1, at 202 (Exhibit 28).

6.    *Federal habeas proceedings*

In March 2020, Kinney, pro se, filed a Petition for Writ of Habeas Corpus under § 2254. Doc. 1. He raised the following grounds for relief:

**Ground 1**:   Appellant's Sixth Amendment rights were violated because trial counsel did not (failed to) file a motion to suppress.

*Supporting facts*: 1) Petitioner would not have plead "no-contest" if evidence would have been suppressed. 2) Counsel allowed this petitioner to plea-out without investigating the evidence and its evidentiary/legal authority/value/admissibility.3) The Court of Appeal decision does not meet Horton's three (3) mandatory requirements.

**Ground 2**:   Ineffective Assistance of Appellate Counsel

*Supporting facts*: 1) Counsel failed to notify appellant of direct appeal decision timely; which prevented him a timely filing of App. R. 25 "Certify a Conflict." 2) Counsel should have filed both/either App. R. 26(A), "Rehearing" and/or App. R. 25 on behalf of Appellant/Petitioner due to time restraints when he knew or should have known that the Appellate's court decision was erroneous.

Doc. 1, at 6-8. Respondent David Gray filed a Return of Writ, Doc. 9, and Kinney filed a Traverse, Doc. 10.

6

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 ("AEDPA"), petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state-court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

　　1.　*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have

jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

      2.   *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review

8

of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

9

3.    *Merits Review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.

10

*Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    Ground 1 fails on the merits*

In Ground 1, Kinney argues that trial counsel was ineffective for not filing a motion to suppress. Doc. 1, at 6. Kinney alleges that the Ohio Court of Appeals' decision denying this claim was contrary to *Horton v. California*, 496 U.S. 128 (1990). Gray argues that Ground 1 fails on the merits. Doc. 9, at 17-25.

To show that trial counsel was ineffective, Kinney must prove that trial counsel's performance was deficient and that he was prejudiced as a result. *Premo v. Moore*, 562 U.S. 115, 121 (2011). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). As to *performance*, Kinney must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. As to *prejudice*, Kinney must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (citation and internal quotation marks omitted). A court applies a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). And the court's review

12

is "doubly deferential"—to counsel, under *Strickland*, and to the state court's decision, under AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The Ohio Court of Appeals considered Kinney's claim:

{¶9} In appellant's first assignment of error, he argues that he was denied the effective assistance of counsel because his counsel failed to file a motion to suppress.[1]

> [FN1] We note though that appellant's trial counsel did file a motion in limine a week prior to trial seeking to exclude any photographs of either victim and photographs of appellant's SUV. The trial court denied this motion.

{¶10} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial court proceedings would have been different. *State v. Cobb*, 8th Dist. Cuyahoga No. 106928, 2018-Ohio-5043, 2018 WL 6618224, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Reasonable probability" is such "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 466 U.S. 668, 104 S.Ct. 2052. An appellant's failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697, 466 U.S. 668, 104 S.Ct. 2052.

{¶11} We note that the failure to pursue a motion to suppress in the trial court does not automatically establish an ineffective assistance of counsel claim on appeal. *State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, 2017 WL 4550869, ¶ 31.

> To establish ineffective assistance of counsel for failure to pursue a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question and that there was a reasonable probability both that a motion to suppress would have been successful if pursued and that suppression of the challenged evidence would have changed the outcome of the case.

*Id.*

13

{¶12} Trial counsel is not obligated to pursue a motion to suppress if such a motion would be futile. *Id*. "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could reasonably have decided that filing a motion to suppress would have been a futile act.'" *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, 2015 WL 1851496, ¶ 28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, 2015 WL 135434, ¶ 13. Therefore, if established principles of law demonstrate that a motion to suppress would have been denied, counsel cannot be considered ineffective for failing to pursue such a motion. *State v. Brooks*, 11th Dist. Lake No. 2011-L-049, 2013-Ohio-58, 2013 WL 142625, ¶ 57.

{¶13} Appellant argues that all evidence seized in the instant matter was seized in violation of the Fourth Amendment. More specifically, appellant argues that the plain view exception to the warrant requirement is not applicable because the area searched, appellant's garage, fell under the protections of the Fourth Amendment because the garage was within the curtilage of his home.

{¶14} Under the Fourth Amendment, the state is "prohibited from making unreasonable, warrantless intrusions into areas where people have legitimate expectations of privacy." *State v. Crenshaw*, 8th Dist. Cuyahoga No. 90635, 2008-Ohio-4859, 2008 WL 4356104, ¶ 11, citing *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

> It is now well established that Fourth Amendment protections extend to the "curtilage" of the home. *U.S. v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). The curtilage is an area immediately adjacent to a person's home that he or she may reasonably expect will remain private. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Therefore, the right of the police to come into the curtilage is highly restricted. *State v. Woljevach*, 160 Ohio App.3d 757, 2005-Ohio-2085, 828 N.E.2d 1015 (6th Dist.). Absent a warrant, police have no greater rights on another's property than any other visitor has. *Id*. The only areas of the curtilage where the officers may go are those impliedly open to the public. *Id*.

*Id*. at ¶ 12.

{¶15} In support of his ineffective assistance of counsel claim, appellant cites to *Collins v. Virginia*, —— U.S. ——, 138 S.Ct. 1663, 201 L.Ed.2d

14

9 (2018), a recently decided United State Supreme Court case. We note that *Collins* was decided on May 29, 2018, and appellant entered his no contest plea on January 2, 2018. As such, *Collins* could not have been relied upon by his trial counsel. Therefore, to the extent that appellant argues that the holding in *Collins* supports his argument that his trial counsel should have filed a motion to suppress, we do not agree.

{¶16} Furthermore, the court in *Collins* dealt with the automobile exception to the warrant requirement, whereas the instant matter deals with the plain view exception. The precise issue in *Collins* was "whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein." *Id*. at 1668. Thus, *Collins* is not directly applicable to the instant matter.

{¶17} Nevertheless, we find *Collins* to be factually distinguishable. In *Collins*, the property that was subject to an illegal search was a stolen motorcycle. This stolen motorcycle was fully covered by a tarp and parked on the top of the driveway at *Collins's* girlfriend's home, but was partially visible by investigating officers while they viewed the property from the street. The court found that the area where the motorcycle was parked was inside a partially enclosed top portion of the driveway that adjoined to the house and was therefore within the curtilage of the home. As such, the court held that "[t]he automobile exception does not permit the warrantless entry of a home or its curtilage in order to search a vehicle." *Id*. at 1668.

{¶18} In the instant matter, investigating officers observed video footage taken from an RTA bus that showed a black SUV striking and killing two individuals as they crossed East 93rd Street traveling east to west. Investigating officers also received an anonymous tip indicating that appellant was the driver of the SUV. Based upon this information, officers thereafter visited appellant's residence. As these officers were on the street, they viewed appellant's vehicle, a black SUV, from the street. The hood of appellant's SUV was partially covered by a blanket, but officers were able to view the SUV's cracked windshield from the street. Officers noted that the damage to the windshield was consistent with the damage as observed in the RTA bus video.

{¶19} The state argues that appellant's SUV was a valid search under the plain view exception to the warrant requirement. In order to justify the warrantless seizure of property under the plain view exception, the following must be established: "'(1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the

15

officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face.'" *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, 2011 WL 3860503, ¶ 33, quoting *Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The United States Supreme Court has found that the Fourth Amendment 'protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.'" *State v. Logan*, 8th Dist. Cuyahoga No. 88472, 2007-Ohio-2636, 2007 WL 1559305, ¶ 67, quoting *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (2001).

{¶20} We find that under the plain view exception to the warrant requirement, the warrantless search of appellant's SUV was not in violation of the Fourth Amendment. Appellant's vehicle was observed from the street by investigating officers. Investigating officers did not have to shield their eyes as they observed the SUV's damaged windshield. *Id*. The SUV was partially in the garage with the front end partially out in to the driveway. The officers were lawfully present at appellant's house to follow up on an anonymous tip. Because these officers had a lawful right to be at appellant's residence based on this tip, the officers had a lawful right of access to the evidence. *See State v. Young*, 2015-Ohio-1347, 31 N.E.3d 178 (12th Dist.) (plain view exception applied because evidence was viewed outside on the defendant's patio where the officer had a right to be because officers had received an alert that defendant's girlfriend was attempting to purchase pseudoephedrine for the manufacture of methamphetamine). Lastly, it was immediately apparent that the property seized was incriminating on its face, i.e., appellant's SUV matched the SUV in the RTA bus video and the damage to the windshield was consistent with the damage as observed in the video.

{¶21} We find these facts analogous to *Willoughby v. Dunham*, 11th Dist. Lake No. 2010-L-068, 2011-Ohio-2586, 2011 WL 2120095. In *Dunham*, the Eleventh District affirmed the trial court's denial of Dunham's motion to suppress based upon the plain view doctrine. The court noted that "the victim of the hit-skip filed a police report in which she identified the location of the accident; the type of vehicle that struck her vehicle; the license plate number of the vehicle; and a description of the driver of the vehicle." *Id*. at ¶ 18. An investigating officer used this information to find the vehicle owner's address "and, before pulling into the driveway, observed the subject vehicle from his cruiser. The vehicle had been backed into the driveway and the officer testified he was able to observe 'fresh damage on the front bumper of the vehicle.'" *Id*.

16

{¶22} In affirming the trial court's denial of Dunham's motion to suppress, the court noted that

> [T]he officer drove to appellant's address in service of a "legitimate societal purpose," viz., investigating the reported hit-skip. Upon his arrival, the officer was able to see the damage to the vehicle in "plain view" from the street (even before entering appellant's driveway). Prior to knocking on appellant's door, the officer took a closer look at the damage to the pickup to confirm his initial observations. Because any member of the public could have observed what [the investigating officer] saw from the street or appellant's driveway, appellant clearly had no reasonable expectation of privacy in the condition of his pickup. Thus, no Fourth Amendment interest was implicated by the officer's conduct in viewing the damaged vehicle.

*Id.* at ¶ 22.

{¶23} We find the instant matter analogous to *Dunham*. In the instant matter, officers went to appellant's home to investigate the homicide. Therefore, the officers were lawfully present at the place from which they plainly viewed appellant's SUV. As officers viewed the SUV, they also had a lawful right of access to the SUV. Lastly, it was immediately apparent that the SUV was incriminating on its face.

{¶24} To the extent that appellant argues that the SUV was within the curtilage of the home, we do not agree. The incriminating nature of the evidence, the damage to the SUV's windshield, was immediately apparent from the officer's lawful viewpoint from the street. Because the damage to the SUV was clearly visible from the street, appellant could not have had an expectation of privacy with regards to the SUV. Therefore, officers did not have to enter the curtilage of appellant's home to view the incriminating nature of the evidence. *See State v. Morgan*, 5th Dist. Fairfield No. 13-CA-30, 2014-Ohio-1900, 2014 WL 1836015 (because officers were not lawfully present in the curtilage of the defendant's home when they observed several marijuana plants on a rear deck of the home, the plain view exception did not apply).

{¶25} As such, there was no Fourth Amendment violation by the investigating officers's conduct in viewing the damage to the SUV. *Id.* at ¶ 22. Given these facts and based upon the plain view exception to the warrant requirement, any such motion appellant's counsel could have filed would have been futile.

17

{¶26} Based on the foregoing analysis, we find that appellant's trial counsel's failure to pursue a motion to suppress was not ineffective because we find that there was no basis to suppress the evidence in question. We therefore cannot find that appellant's trial counsel was deficient in failing to file a motion to suppress that would have been futile. *State v. Watts*, 8th Dist. Cuyahoga No. 104188, 2016-Ohio-8318, 2016 WL 7427296, ¶ 22.

{¶27} Because appellant has failed to demonstrate that counsel's performance was deficient, we need not consider the "reasonable probability" prong; i.e. that the outcome of the case would have been different. *Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52.

{¶28} Accordingly, appellant's first assignment of error is overruled.

*State v. Kinney*, 2019 WL 855673, at *2-5 (Oh. Ct. App. Feb. 1, 2019).

Kinney argues that the Ohio Court of Appeals' decision was *contrary to Horton v. California*. Doc. 1, at 6; Doc. 10, at 4. In *Horton*, the police obtained a warrant to search a house for stolen property after an armed robbery. 496 U.S. at 130-31. During the search, the police didn't find the stolen property, but they found weapons, in plain view, that were used by the robbers. *Id*. at 131. The police admitted that they didn't discover the weapons "inadvertently" because they were looking for other evidence outside the scope of the warrant. *Id*. The Court explained that the "plain view" exception to the warrant requirement has three elements: that the police be lawfully in a position from which they may view the object in question, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object. *Id*. at 136-37. The Court found that the officers met those requirements. The weapons were in plain view when the officers were

conducting a lawful search and it was "immediately apparent" to the officers that the weapons were incriminating. *Id.* at 142.

Here, Kinney does not show that the Ohio Court of Appeals' decision was *contrary to Horton*. He argues that an anonymous tip doesn't give the police a right "to be on [his] residence." Doc. 10, at 6. But the police, at a minimum, had a right to stand on the street and walk up to his home. *See Florida v. Jardines*, 569 U.S. 1, 8 (2013) ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'") (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).[1] Kinney's vehicle was in plain view from the officers' lawful vantage point as they stood on the street and then approached Kinney's home. The incriminating nature of Kinney's black SUV with a damaged windshield was immediately apparent to the officers. So the *plain-view* exception applies, and the Ohio Court of Appeals' decision was not *contrary to Horton*.

Kinney asserts that the vehicle's incriminating nature wasn't apparent "until police removed the blanket from the SUV" and saw that the "Chevy 'bow-tie' emblem missing on petitioner's SUV was linked to the one found at the scene of the accident." Doc. 10, at 7. He also disputes whether the police could discern that the SUV's damaged windshield matched the damaged windshield they saw on the "grainy" video recording of the accident. Doc. 10, at 8. But

---

[1]     The Ohio Court of Appeals found that the police could see Kinney's vehicle from the street. Kinney does not dispute that fact.

there is no dispute that the police saw a black SUV with a damaged windshield exposed in Kinney's driveway. Given the facts of this case, that was incriminating enough.

In his Traverse, Kinney argues that the Ohio Court of Appeals' decision was *contrary to* four Supreme Court cases: *Jardines*, 569 U.S. 1; *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977); *Soldal v. Cook County*, 506 U.S. 56 (1992); and *Collins v. Virginia*, 138 S. Ct. 1663 (2018). Doc. 10, at 4. I disagree.

In *Jardines*, the Court held that a Fourth Amendment search occurred when police officers approached a suspect's front porch with a trained drug sniffing dog to see if the dog would alert to the presence of drugs. 569 U.S. at 5-9. Here, the officers did not use a drug sniffing dog, or any other "device," to investigate otherwise undetectable criminal activity.[2] Rather, the police saw, with their own eyes, a black SUV with a damaged windshield. In *G.M. Leasing Corp.*, the Court rejected the government's assertion that it could enter a corporation's private property without a warrant to seize items to satisfy a tax assessment. 429 U.S. at 354. The Court did not apply the plain view doctrine. *Id.*, at 358 n.21. In *Soldal*, the Court held that Fourth Amendment rights were implicated when a trailer park owner towed another person's trailer home off the trailer park owner's property in the presence of the police and while an

---

[2]    The concurrence in *Jardines* explained, "The police officers here conducted a search because they used a "device ... not in general public use" (a trained drug-detection dog) to "explore details of the home" (the presence of certain substances) that they would not otherwise have discovered without entering the premises." 569 U.S. at 14–15 (Kagan, J., concurring).

eviction order was pending. *Id.*, at 57-62. None of these cases are on point and they don't help Kinney here.

*Collins* does not entitle Kinney to relief because *Collins* was decided after the trial court accepted Kinney's no contest plea and sentenced him, as the Ohio Court of Appeals observed. *Kinney*, 2019 WL 855673, at *3 ("We note that *Collins* was decided on May 29, 2018, and appellant entered his no contest plea on January 2, 2018. As such, *Collins* could not have been relied upon by his trial counsel."); *Kimmelman*, 477 U.S. at 384 (a court evaluates the reasonableness of counsel's performance at the time of the alleged error). Also, *Collins* didn't apply the *plain view* doctrine; it applied the "automobile exception." 138 S.Ct. at 1671; *Kinney*, 2019 WL 855673, at *3.

But, Kinney contends, "Collins…solidifies the plain-view doctrine, commanding the stringent conditions of Horton….The [Supreme Court] has never allowed whether the plain-view nor the automobile exception to allow unlawful trespass within the curtilage of one's private residence without a warrant or permission[.]" Doc. 10, at 8 (citing *Collins*, 138 S.Ct. at 1672). First, the Ohio Court of Appeals found that Kinney's SUV was not within the *curtilage* of his home, a finding that Kinney does not challenge. *Kinney*, 2019 WL 855673, at *5; *see also U.S. v. Contreras*, 820 F.3d 255, 261 (6th Cir. 2016) (defendant did not have an expectation of privacy in his "wide-open-to-any-passer-by-view" garage, even if the attached garage was part of the *curtilage* of the house).

21

Next, as part of its explanation for why it would not extend the *automobile* exception to apply to the police officer's conduct, the *Collins* Court wrote:

> The Court already has declined to expand the scope of other exceptions to the warrant requirement to permit warrantless entry into the home. The reasoning behind those decisions applies equally well in this context. For instance, under the plain-view doctrine, "any valid warrantless seizure of incriminating evidence" requires that the officer "have a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136–137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also id.*, at 137, n. 7, 110 S.Ct. 2301 (" '[E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure' "); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) ("It is one thing to seize without a warrant property resting in an open area ..., and it is quite another thing to effect a warrantless seizure of property ... situated on private premises to which access is not otherwise available for the seizing officer"). A plain-view seizure thus cannot be justified if it is effectuated "by unlawful trespass." *Soldal v. Cook County*, 506 U.S. 56, 66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Had Officer Rhodes seen illegal drugs through the window of Collins' house, for example, assuming no other warrant exception applied, he could not have entered the house to seize them without first obtaining a warrant.

138 S.Ct. at 1672. This passage reaffirms the rule in *Horton*. It does not support Kinney's argument that the *plain view* or *automobile* exceptions have always prohibited police officers from the conduct in his case.

Kinney challenges the Ohio Court of Appeals' factual finding that he walked out of the house and confessed to the crime before, not after, the officers removed the blanket from the hood of his SUV. Doc. 10, at 5-6. Kinney doesn't produce clear and convincing evidence to overcome the presumption that the state court's factual determination was not unreasonable, as he must do. *See*

*Burt v. Titlow*, 571 U.S. 12, 18 (2013). Even if Kinney's version of events is true, that purported factual difference doesn't change the outcome here. The officers did not drift into unconstitutional waters when, pre-*Collins*, they were in a lawful place, saw Kinney's SUV in plain view, observed immediately apparent incriminating evidence, and, allegedly, walked over and removed the SUV's partial covering. *See Horton*, 496 U.S. at 142; *United States v. Galaviz*, 645 F.3d 347, 354-357 (6th Cir. 2011) (*plain view* and *automobile* exceptions applied when police walked up the defendant's driveway and saw, through the window of a car parked in the driveway, a gun sticking out from under the car's seat and then broke into the locked car to retrieve it).

Indeed, in *Alberts v. Perry*, a district court rejected a federal habeas petitioner's ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress evidence seized from petitioner's car parked in his driveway a few feet from his home. 2020 WL 7260927, at *7-8 (M.D. Tenn. Dec. 10, 2020), *certificate of appealability denied*, 2021 WL 6503902 (6th Cir. Oct. 5, 2021), *cert. denied*, 142 S. Ct. 1384 (2022). The court explained,

> "[I]t was not until 2018 that the Supreme Court expanded the scope of Fourth Amendment protections to reach, under certain circumstances, cars parked in the driveway of a home. In *Collins v. Virginia*, the Court held, for the first time, that a driveway may be considered part of a home's curtilage for Fourth Amendment purposes. 138 S. Ct. 1663, 1670-71 (2018). The Court also held, for the first time, that a vehicle parked on the curtilage of a home is not subject to warrantless search pursuant to the automobile exception.[] *Id*. at 1671-72.

> The developments set forth in *Collins* were not "clearly foreshadowed" at the time of Petitioner's trial. *See, e.g., United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011) (concluding that police did not intrude upon

23

curtilage by entering a driveway adjacent to a home that was not enclosed by any barrier where cars were parked near a public sidewalk); *United States v. Estes*, 343 F. App'x 97, 101 (6th Cir. 2009) (concluding driveway was not curtilage because it was not enclosed, the defendant had not taken any steps to protect it from observation by passersby, and it was used as a point of entry to the defendant's residence); *see also United States v. May-Shaw*, 955 F.3d 563 (6th Cir. 2020) (rejecting argument that prior Sixth Circuit caselaw had established "a broad rule that a carport is always within the curtilage of a home" and noting that "[e]very curtilage determination is distinctive and stands or falls on its own unique set of facts") (quoting *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir. 1998)); *Collins*, 138 S. Ct. at 1682 (Alito, J., dissenting) (concluding that the court's decision "use[d] the curtilage concept" in a new way and was a "substantial alteration" of Fourth Amendment law).

Petitioner cannot, therefore, rely on these eventually forthcoming legal developments to establish that trial counsel rendered constitutionally-deficient performance in connection with the motion to suppress litigated before his 2013 trial…

2020 WL 7260927, at *7-8.

Kinney has not shown that the Ohio Court of Appeals' decision denying his ineffective assistance of counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Kinney has not shown that the Ohio Court of Appeals' factual determination was unreasonable. Kinney has not shown that, even if this Court accepts his facts as true, counsel was ineffective for not filing a motion to suppress because that motion would have been unsuccessful. *See, e.g., United States v. Thomas*, 38 F. App'x 198, 201–03 (6th Cir. 2002) (where a motion to suppress would have been unsuccessful, counsel is not ineffective for not filing one) (citing

*Worthington v. United States*, 726 F.2d 1089, 1093–94 (6th Cir. 1984) (Contie, J., concurring)).

Ground 1 fails on the merits.

2.    *Ground 2 fails on the merits and is procedurally defaulted*

In Ground 2, Kinney argues that appellate counsel was ineffective for not notifying him soon enough that the Ohio Court of Appeals denied his direct appeal. Doc. 1, at 8. Kinney also alleges that appellate counsel should have filed a motion for rehearing or a motion to certify a conflict. *Id.*

In his Return of Writ, Gray argues that Ground 2 is procedurally defaulted and "fails to state a basis for relief." Doc. 9, at 25-27. In his Traverse, Kinney requests that the Court "investigate this claim mainly due to the abuse of the judicial system." Doc. 10, at 11. He claims that, had appellate counsel filed his App. R. 25 and App. R. 26 motions, "it would have altered the outcome of his direct appeal." *Id.* Kinney also writes, "Ground Two hinges off of the outcome of Ground One; in that, if petitioner's Fourth Amendment claim is meritorious, then only, would Ground Two be relevant." Doc. 10, at 4.

Because Ground 1 is not meritorious, then, per Kinney, Ground 2 is not relevant. So it fails on the merits.

Ground 2 also fails on the merits because Kinney's motion for reconsideration was denied by the Ohio Court of Appeals. Kinney doesn't show how "it would have altered the outcome of his direct appeal" if counsel, rather than Kinney, submitted that filing.

And Ground 2 is procedurally defaulted. In his Rule 26(B) *Application for reopening*, Kinney argued that appellate counsel was ineffective for not filing a motion for reconsideration or to certify a conflict, and not advising Kinney of his appellate rights. Doc. 9-1, at 147. The Ohio Court of Appeals denied Kinney's application. It explained that Kinney's alleged reasons that appellate counsel was ineffective "are not authentic assignment of error [because] '[t]hey do not address mistakes in the trial court that could be rectified on appeal.'" Doc. 9-1, at 167 (citing *State v. Montgomery*, 2016 WL 541448 (Oh. Ct. App. Feb. 3, 2016)); *see also* Ohio App. R. 26(B)(1) ("A defendant in a criminal case may apply for reopening *of the appeal from the judgment of conviction and sentence*, based on a claim of ineffective assistance of appellate counsel.") (emphasis added). The Ohio Court of Appeals also explained that "communications between appellate counsel and the applicant cannot provide the basis of reopening." Doc. 9-1, at 167 (citing *State v. Pratt*, 2010 WL 4018652, at *2 (Oh. Ct. App. Oct. 12, 2010) ("The issue of failing to provide notice of this appellate judgment, in order to timely file an application for reconsideration per App.R. 26(B), could not be raised on direct appeal and thus cannot form a basis for reopening under App.R. 26(B).")).

In other words, the Ohio Court of Appeals enforced an applicable state procedural bar that Kinney failed to comply with. *Maupin*, 785 F.2d at 138. That state procedural bar is an adequate and independent ground upon which the state can foreclose review. *Id.* So Ground 2 is procedurally defaulted. *Id.*

26

Kinney has not shown cause or prejudice to excuse the procedural default and he hasn't shown "that there will be a fundamental miscarriage of justice if the claims are not considered." *Coleman*, 501 U.S. at 750.

Ground 2 fails on the merits and is procedurally defaulted.

**Conclusion**

For all the reasons set forth above, I recommend that Kinney's Petition be denied.

Dated: October 20, 2022

   */s/ James E. Grimes Jr.*
   James E. Grimes Jr.
   U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).